**SIGNED THIS: July 23, 2014**

_____
**Thomas L. Perkins
United States Bankruptcy Judge**

**UNITED STATES BANKRUPTCY COURT
CENTRAL DISTRICT OF ILLINOIS**

| | |
|---|---|
| IN RE: | ) |
| | ) |
| RONALD D. LEE, | )   Case No. 13-82374 |
| | ) |
| Debtor. | ) |

**O P I N I O N**

Before the Court is the objection filed by Jeana K. Reinbold, the Chapter 7 Trustee (TRUSTEE), to certain exemptions claimed by the Debtor, Ronald D. Lee (DEBTOR), specifically an exemption of the cash surrender value of two life insurance policies and an exemption in a bank account.

The facts of this case are not disputed. The DEBTOR, proceeding *pro se*, filed a Chapter 7 petition on December 30, 2013. In the schedules filed with his petition, the DEBTOR disclosed his interest in two life insurance policies with Northwestern Mutual. Policy #6-910-816 was listed as having a cash surrender value of $10,223 and #7-706-169 was shown with a cash surrender value of $10,433. The DEBTOR also scheduled a "pension" account at Blackhawk Bank & Trust with a balance of $3,894 ("Blackhawk

account"). The DEBTOR claimed the insurance policies as exempt under section 238(a) of the Illinois Insurance Code, 215 ILCS 5/238(a), and the Blackhawk account as exempt under section 12-1006 of the Illinois Code of Civil Procedure, 735 ILCS 5/12-1006.

Despite an initial misunderstanding, the parties now agree to the material facts about the insurance policies.[1] The DEBTOR'S life is insured under both policies (he pays the premiums), and his son, Joshua, is the sole beneficiary named in each policy. Joshua is an adult who does not reside with the DEBTOR, and whom the DEBTOR concedes is not his dependent.

The disputed issue is whether the cash surrender value of these policies is exempt pursuant to section 238(a) of the Illinois Insurance Code, which provides:

> (a) All proceeds payable because of the death of the insured and the aggregate net cash value of any or all life and endowment policies and annuity contracts payable to a wife or husband of the insured, or to a child, parent or other person dependent upon the insured, whether the power to change the beneficiary is reserved to the insured or not, and whether the insured or his estate is a contingent beneficiary or not, shall be exempt from execution, attachment, garnishment or other process, for the debts or liabilities of the insured incurred subsequent to the effective date of this Code, except as to premiums paid in fraud of creditors within the period limited by law for the recovery thereof.

215 ILCS 5/238(a). It is the DEBTOR'S position that, as both the owner of and the insured under the policies, he is the only person that possesses a present entitlement to any interest under the policies, so that he is entitled to claim the cash surrender value as exempt. The DEBTOR maintains that the dependency status of his son is not relevant, as his son is not the one claiming the exemption.

---

[1] According to the TRUSTEE, the cash value of policy #6-910-816 was $31,341.40. The policy was subject to a loan with a remaining balance of $22,936.54. The cash value of policy #7-706-169 was $15,430.52. That policy was also subject to a loan with a remaining balance of $5,735.46. It is not necessary for this Court to determine the exact petition-date amounts of the cash surrender values at issue, which are easily ascertained from the insurer's records. Those cash values are either fully exempt or not exempt at all.

2

In support of his position, the DEBTOR relies on this Court's prior decision in *In re Ashley*, 317 B.R. 352 (Bankr.C.D.Ill. 2004), holding that a debtor who had received life insurance proceeds from policies insuring the life of her late husband was entitled to claim an exemption in the full amount of the proceeds under section 12-1001(f) of the Illinois Code of Civil Procedure, without having to establish that the proceeds were reasonably necessary for her support or the support of a dependent of hers.[2]  In that decision, the Court examined the three statutory provisions which provide exemptions for life insurance, noting that the Insurance Code exemption at issue here protects the proceeds or cash value only against the debts of the insured, and not from the beneficiary's own creditors.  Because it was the beneficiary in *Ashley* that was seeking to protect insurance proceeds from her creditors, section 238(a) was not applicable.

As section 238(a) makes clear, however, the ability of an owner of a life insurance policy to claim an exemption in its cash surrender value, depends upon whether the designated beneficiary meets one of the categorical conditions set forth in the statute.  It is well settled that an owner of a life insurance policy may claim an exemption under this provision only if the beneficiary is the individual's spouse or is a dependent child, dependent parent or other person dependent upon the insured. The inapplicability of this exemption to a policy naming a non-dependent child as a beneficiary was decided by *In re Schriar*, 284 F.2d 471 (7th Cir. 1960).  The court held that the phrase "dependent upon the insured" modifies "child" and "parent," as well as "other person," thus requiring a

---

[2]Although the debtor/beneficiary had originally claimed an exemption under section 238, the parties' arguments were addressed to the exemption for insurance proceeds contained in the general, personal property exemption law, 735 ILCS 5/12-1001(f).

3

showing that such child or parent is in fact dependent upon the insured. The language of the statute has not changed since *Schriar* and the result remains the same. The lower courts in this Circuit have consistently followed *Schriar*. *See, In re Bunting,* 322 B.R. 852, 853-54 (Bankr.C.D.Ill. 2005)(collecting cases).

The DEBTOR also relies on an insurance policy provision which he characterizes as a "spendthrift" provision. The DEBTOR attaches a single page, captioned "Section 8. Beneficiaries," which includes, among the subcategory of general provisions in section 8.3:

> (b) Claims of Creditors. So far as permitted by law, no amount payable under this policy shall be subject to the claims of creditors of the payee.

Emphasizing that he can be the only "payee" of the policies during his lifetime, the DEBTOR relies on the contractual provision to insulate the cash surrender value of the policies from the grasp of the TRUSTEE. First, the Court notes that the page of the policy submitted by the DEBTOR is limited to "Beneficiaries." From a reading of that single page, it is apparent that its provisions are directed only to payees who are "beneficiaries" designated by the owner. The DEBTOR, though both the owner and insured, is not a beneficiary and thus is not a "payee." Rather, the contractual provision relied upon by the DEBTOR is intended to protect the proceeds held by the insurance company (either the accumulated cash value or the death benefit itself) from attachment by creditors of the beneficiaries.

Apart from the inapplicability of that policy provision, the DEBTOR'S argument suffers from a more basic flaw. In order for the DEBTOR'S interests in the life insurance policies to be insulated from the claims of creditors in bankruptcy, those interests must

4

either be excluded from the bankruptcy estate under section 541(b) or (c)(2), or exempt under section 522(b)(2). *In re Balay*, 113 B.R. 429 (Bankr.N.D.Ill. 1990). Upon the filing of a bankruptcy petition, virtually all property that the debtor owns on that date becomes property of the bankruptcy estate. *See In re Quade*, 498 B.R. 852 (N.D.Ill. 2013). Section 541(a) of the Bankruptcy Code broadly defines property of the bankruptcy estate to include "all legal or equitable interests of the debtor in property as of the commencement of the case." The scope of section 541 is broad and unquestionably includes a debtor's interest in a life insurance policy.

Despite the breadth of this provision, section 541 contains several exclusions from property of the estate. The DEBTOR'S characterization of the contractual provision of the life insurance policy as a "spendthrift" clause invokes section 541(c)(2), which excludes a debtor's beneficial interest in a trust that is subject to a restriction on transfer that is enforceable under applicable nonbankruptcy law. 11 U.S.C. § 541(c)(2). The "spendthrift exception," by its terms, applies only to a beneficial interest of the debtor in a trust. *See In re Powell*, 511 B.R. 107 (Bankr.C.D.Ill. 2014). Contractual restrictions on transfer are ineffective in bankruptcy except as applicable to a beneficial interest of the debtor in a trust. *In re Jokiel,* 453 B.R. 743, 750 (Bankr.N.D.Ill. 2011).

A trust is defined as "a fiduciary relationship with respect to property, arising from a manifestation of intent to create that relationship and subjecting the person who holds title to the property to duties to deal with it for the benefit of charity or for one or more persons, at least one of whom is not the sole trustee." RESTATEMENT (THIRD) OF TRUSTS § 2 (2003). It is well-settled under Illinois law that no fiduciary relationship exists between

5

an insurer and an insured as a matter of law. *Phillips v. Prudential Ins. Co. of America*, 714 F.3d 1017 (7th Cir. 2013). Rather, the relationship between an insurance company and the insured is simply contractual in nature. The DEBTOR does not argue that particular provisions of the insurance policies create a trust as between the insurance company and the DEBTOR. In any event, the DEBTOR'S ability to obtain the cash surrender value at any time is antithetical to a spendthrift trust.

To the extent that the DEBTOR contends that the contractual provision creates an "exemption" for the cash surrender value, his argument is unavailing. Exemptions are creatures of statute, and may not be created by contract. *Reade v. Kerr*, 52 Ill.App. 467, 1893 WL 2458 (Ill.App. 4 Dist. 1894); *In re Thum*, 329 B.R. 848 (Bankr.C.D.Ill. 2005) (citing *In re Marriage of Logston*, 103 Ill.2d 266, 277, 469 N.E.2d 167 (1984)(exempt property is that which the legislature has identified and declared to be free from liability for the satisfaction of debts)); *In re Lowe,* 252 B.R. 614, 625-26 (Bankr.W.D.N.Y. 2000).

Accordingly, the TRUSTEE'S objection is valid and the DEBTOR'S claim of exemption in the cash surrender value of the two life insurance policies pursuant to section 238(a) of the Illinois Insurance Code will be denied.

The second issue is whether the funds in the Blackhawk account are exempt pursuant to section 12-1006, the exemption for retirement plans. The TRUSTEE does not dispute that the funds in the account are traceable solely to pension benefits or that the funds have been maintained in a segregated fashion. Section 12-1006 provides in pertinent part:

> (a) A debtor's interest in or right, whether vested or not, to the assets held in or to receive pensions, annuities, benefits, distributions, refunds of contributions,

or other payments under a retirement plan is exempt from judgment, attachment, execution, distress for rent, and seizure for the satisfaction of debts if the plan (i) is intended in good faith to qualify as a retirement plan under applicable provisions of the Internal Revenue Code of 1986, as now or hereafter amended . . . .

> (b) "Retirement plan" includes the following:
>   (1) a stock bonus, pension, profit sharing, annuity, or similar plan or arrangement, including a retirement plan for self-employed individuals or a simplified employee pension plan;
>         * * *
>   (3) an individual retirement annuity or individual retirement account;
>         * * *
> (d) This Section applies to interests in retirement plans held by debtors subject to bankruptcy, judicial, administrative or other proceedings pending on or filed after August 30, 1989.

735 ILCS 5/12-1006. As the Seventh Circuit Court of Appeals noted in *In re Weinhoeft*, 275 F.3d 604, 605 (7th Cir. 2001), the statute protects both the assets held in pension plans and the right to receive pensions under a retirement plan.

The TRUSTEE contends that the bank account is not a retirement plan, but a simple checking account, not covered by the unambiguous text of paragraph 12-1006(a), which does not extend the exemption to traceable property. The DEBTOR maintains that an order entered in a state court non-wage garnishment action against him on June 17, 2011, prior to the filing of the bankruptcy, is dispositive of the issue here. In that opinion and order, the court held that funds of $3,740.70, on deposit in the DEBTOR'S checking account at the time the garnishment was served and representing periodic pension payments designed to provide support to the DEBTOR and his family, were exempt under section 12-1006, relying on *Auto Owners Ins. v. Berkshire*, 225 Ill.App.3d 695, 588 N.E.2d 1230 (Ill.App. 2 Dist. 1992).

In response, the TRUSTEE asserts that the issue before the state court was different from that before this Court, suggesting that the same statute should be applied one way in a nonbankruptcy forum and a different way by a bankruptcy court. This Court disagrees. Bankruptcy courts must interpret and apply Illinois exemption law in the same manner as Illinois state courts. *In re Bowen*, 458 B.R. 918 (Bankr.C.D. Ill. 2011)(citing *Adams v. Catrambone*, 359 F.3d 858, 862 (7th Cir. 2004)).

Because the TRUSTEE was not involved in the garnishment action, the state court's decision has no preclusive effect here, either as a matter of claim preclusion or issue preclusion. *See Hayes v. State Teacher Certification Bd.*, 359 Ill.App.3d 1153, 1161-62, 835 N.E.2d 146 (Ill.App. 5 Dist. 2005). The more difficult question is whether *Berkshire's* determination is correct that the exemption under section 12-1006 extends to traceable funds, despite the absence of statutory language to that effect. The *Berkshire* holding is contrary to several judicial decisions that recognize that the Illinois Legislature purposefully distinguishes between exempting a right to receive a benefit payment and exempting such payments after distribution. *See Fayette County Hosp. v. Reavis*, 169 Ill.App.3d 246, 523 N.E.2d 693 (Ill.App. 5 Dist. 1988); *In re Marriage of Pope-Clifton*, 355 Ill.App.3d 478, 823 N.E.2d 607 (Ill.App. 4 Dist. 2005). *Berkshire* has been criticized by at least one federal court. *In re Holtermann*, 1999 WL 33582613 (Bankr.C.D.Ill. 1999) (Altenberger, J.).

In *Berkshire*, the court held, as a matter of first impression, that funds held in the debtor's checking account, which consisted solely of payments made by an employer as part of a qualified retirement plan, were exempt under section 12-1006 so long as those payments were traceable to periodic pension distributions intended for current support

8

and not received as a lump-sum distribution. In so holding, the court in *Berkshire* declared that the concept of tracing was part of Illinois law, even where the exemption statute did not specifically provide for it. 225 Ill.App.3d at 700.

The TRUSTEE attempts to distinguish *Berkshire* on the basis that the funds at issue there were minimal in amount, so that *Berkshire* should be limited to its facts. The TRUSTEE relies on *In re Schoonover*, 331 F.3d 575 (7th Cir. 2003), a case involving an Illinois debtor's attempt to exempt $80,000 in a bank account, which he claimed consisted solely of monthly benefits accumulated over a period of years, pursuant to section 12-1001(g), which provides an exemption for social security, veteran's benefits and disability payments, and pursuant to section 12-1006. The bankruptcy judge's finding that the debtor failed to establish that the funds in all but one of the accounts were traceable to the benefit payments, due to conflicting testimony on the issue, was affirmed on appeal. Addressing the debtor's claim of exemption under section 12-1001(g), the Seventh Circuit, noting that the provision was limited to the debtor's right to receive public benefits, stated that the exemption "has nothing to do with funds on deposit long after their receipt and commingling with the debtor's other assets." The court easily rejected the debtor's claim of exemption of the accumulated governmental benefits under the separate exemption intended for tax-qualified retirement plans provided by section 12-1006. Those funds were not derived from a "retirement plan" and the funds in the hands of the debtor could hardly have qualified as one.[3]

---

[3]The TRUSTEE calls attention to this Court's decision last year in *In re Russell,* 2013 WL 4591985 (Bankr.C.D. Ill. 2013), involving the debtors' claim of exemption of a portion of their federal income tax refund attributable to an Earned Income Credit and an Additional Child Tax Credit, pursuant to section 12-1001(g)(1) providing an exemption for public assistance benefits. At the time of the filing of the petition, the income tax refund had been received and deposited in the debtors' bank account, along with non-exempt funds. The Court relied on *Fayette County Hosp. v. Reavis, supra* , a

9

The Seventh Circuit's rejection of the debtor's claim of exemption under section 12-1006, was premised on the nature of the funds as governmental benefits, not pension benefits, so the court did not reach the issue which is presented in this case. The district court distinguished *Berkshire* on the basis that the funds in the account did not consist solely of payments from a qualified retirement plan. *Schoonover v. Karr,* 285 B.R. 695, 699-700 (S.D.Ill. 2002). While the Seventh Circuit cited *Berkshire,* it did not directly address the holding that the exemption under section 12-1006 extends to pension payments once recieved. However, the court, in *dictum,* at least indirectly refuted that holding when it determined that the exemption under section 12-1006 did not apply to funds traceable to public benefits that were "freely usable for current consumption." 331 F.3d at 577.

Nonetheless, the *Berkshire* court itself created two limiting conditions to the exemption in funds received and held by a debtor. First, the court stated that the exemption does not apply if the funds represent a payment of the debtor's total accrued benefits such as a lump sum distribution, since the funds "could be held for future use and investment rather than support." 225 Ill.App.3d at 701. Second, where a debtor accumulates periodic pension payments, even if segregated and traceable, the exemption may be lost "if the debtor transforms the support payments into an investment" where the funds are "not being used for support." 225 Ill.App.3d at 699. Even if *Berkshire* is to be followed by this Court, an issue reserved for later determination, the DEBTOR would have to establish that the funds held in the Blackhawk account are to be used for his support, and have not been transformed into an "investment," which is primarily a question of intent. That issue cannot be resolved on the record before the Court.

---

case decided prior to *Berkshire*, holding that section 12-1001(g), which by its terms exempts only a debtor's "right to receive" certain governmental benefits, did not extend the exemption to payments received by the debtor. The debtors did not rely on *Berkshire* and it did not come to the Court's attention.

In conclusion, the DEBTOR'S claimed exemption in the cash surrender values of the two life insurance policies will be denied. The claimed exemption in the Blackhawk account funds remains pending and will be addressed at a future hearing. This Opinion constitutes this Court's findings of fact and conclusions of law in accordance with Federal Rule of Bankruptcy Procedure 7052. A separate Order will be entered.

###